ST. LOUIS, S. F. & T. RY. CO. v. USSERY.*
(No. 8970.)

(Court of Civil Appeals of Texas. Dallas. Feb. 9, 1924. Rehearing Denied March 8, 1924.)

1. Trial ⬰⟿352(5)—Special issue held not to submit two questions of fact.

In switchman's action against railroad for injuries to arm sustained in coupling cars, in which it was alleged that the railroad was negligent in that the automatic coupling on the cars was not in such condition that coupling could be made automatically by impact without the necessity of the switchmen going between the cars, the special issue of whether "the cars which plaintiff was endeavoring to couple together at the time in question" were "equipped with couplers which in the condition they were in at that time would couple automatically by impact without the necessity of plaintiff going between the cars," held not objectionable as against contention that it submitted two separate and distinct questions of fact; the only question being whether the coupling could be made automatically without the necessity of the switchman going between the cars.

2. Master and servant ⬰⟿111(1½)—Automatic couplers required by Safety Appliance Act.

Under Safety Appliance Act, § 2 (U. S. Comp. St. § 8606), making it unlawful for a common carrier to haul any car used in moving interstate traffic "not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars," a railroad is required to equip cars with automatic couplers which will both couple and uncouple without the necessity of men going in between the cars.

3. Trial ⬰⟿350(6)—Refusal of special issues as to evidentiary matters held not error.

In action against a railroad for injuries to switchman sustained after he had gone between cars to make a coupling, in which it was alleged that the railroad was negligent by reason of the sudden movement of the cars without warning to the switchman, refusal to submit special issues as to whether the train was moved in obedience to a signal from the switchman held not error, in view of finding in response to other special issues that the switchman was not guilty of contributory negligence, since the requested issues related to evidentiary matters bearing on the ultimate issue as to whether the switchman was guilty of negligence.

4. Appeal and error ⬰⟿1062(2)—Refusal to submit certain special issues held not reversible error in view of jury's finding.

In action for injuries to switchman, in which the plaintiff alleged negligence of railroad in use of defective couplers, and also negligence in moving car without warning to the switchman, the refusal to submit requested issues bearing only on the second ground of negligence held not a ground for reversal, where the jury found in favor of the plaintiff on both grounds.

5. Master and servant ⬰⟿278(6)—Findings of negligence in use of defective couplers and movement of cars sustained.

In action for injury to switchman, in which it was alleged that the railroad was negligent in use of defective couplers, and in moving car without warning to plaintiff after he had gone between cars to make coupling, evidence held to sustain special findings of jury as to railroad's negligence.

6. Appeal and error ⬰⟿1002—Special findings on conflicting evidence not disturbed on appeal.

Appellate court will not disturb jury's special findings on conflicting evidence.

7. Damages ⬰⟿132(12)—$13,500 verdict for amputation of arm held not excessive.

$13,500 verdict for injuries to switchman, necessitating amputation of forearm three or four inches below the elbow, held not excessive.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Action by E. M. Ussery against the St. Louis, San Francisco & Texas Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Freeman, McReynolds, Hay & Wolfe, of Sherman, for appellant.
Randell & Randell, of Sherman, for appellee.

JONES, C. J. As the result of a suit in the district court of Grayson county, E. M. Ussery, appellee, recovered damages for personal injuries against St. Louis, San Francisco & Texas Railway Company, appellant, in the sum of $13,500, from which judgment appellant has duly prosecuted its appeal.

Appellee was in the employ of appellant in the capacity of switchman, and at the time of his injury was working with one of appellant's switching crews in its north Sherman yards. On the night of November 20, 1921, this crew was engaged in the work of making up one of appellant's trains in said yards. This train carried interstate commerce, and appellee's injuries were received while he was engaged in such commerce. While the work of making up this train was in progress, it became appellee's duty to go in between two cars in order to cause them to make a coupling, and, while in between said cars in the performance of this work,

⬰⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes,
. *Writ of error refused April 23, 1924.

his left hand was caught in a coupling when the two cars coupled together. The injury was to such an extent as necessitated the amputation of his left forearm about three or four inches below the elbow.

There was a sharp conflict in the testimony of the witnesses on some of the material facts as to the responsibility for this injury. From those facts in which such conflict did not exist, and from the verdict of the jury, we find the injury was caused in the following manner:

After the switching crew had performed its work in making up this train, it was discovered that there had been placed in the train what was termed a "bad order" car, and this car had to be taken out. This was done by cutting the train in two at the place where the "bad order" car was located and placing it on another track, and then again connecting these detached cars to the train. The switching was done by means of signals with a lighted lantern, these signals for the moving of parts of the train being given by the foreman of the switching crew. Appellee was an experienced switchman, and, after the "bad order" car had been disposed of, and the cars that had been cut out with it were to be again coupled into the train, it became his duty to see that this coupling was made. When the cars being moved approached the remainder of the train, appellee gave an easy "come ahead" signal, and, when within about six or seven feet of the rear of the standing cars, appellee discovered that the draw bars were out of line to the extent that the coupling could not be made automatically by impact. He at once gave the "stop" signal, and the cars stopped. He then stepped in between the cars on the track, and caught hold of the draw bar with his left hand to pull it back in line, and, at the moment he pulled on the draw bar, the cars being switched into the train were moved suddenly and coupled up with his hand and arm in the coupler. When the moving cars stopped on the signal to appellee for him to step between them, the cars were about three feet apart. Under the custom and manner of doing the work in those yards, after appellee had stopped the moving cars by signal, no movement of the cars should be made except on a signal by appellee. Appellee did not signal the cars to make the movement which resulted in his injury.

Appellee predicated negligence on two grounds, to wit, the failure of appellant to have the automatic coupling on the cars in such condition as that the coupling would be made automatically by impact and without the necessity of appellee's going in between the cars, and also on the ground of the sudden movement of the cars without warning and without any signal from appellee to do so.

Appellant predicated its defense on a denial of the grounds of negligence as alleged by appellee, and on the further ground that the injuries received by him were the result of his own negligence, and were the result of one of the risks incident to his employment; and, further, that the injuries were the result of an accident.

The case was tried before a jury, and submitted on special issues. In response to these special issues the jury found that the cars which appellee was endeavoring to couple together on the occasion in question were not equipped with couplers which, in the condition they were in at that time, would couple automatically by impact, without the necessity of appellee's going between the cars, and that such condition was the proximate cause of appellee's injury. The jury also found that the employés of appellant, other than appellee, engaged in making up the train at the time in question caused the cars appellee was attempting to couple together to be suddenly pushed forward with force while he was between the cars; that such employés in suddenly pushing forward the cars while appellee was between them were guilty of negligence, and that such negligence was the proximate cause of his injuries.

The jury also found that appellee, in going between the cars and placing his hand on the coupling apparatus at said time, was not guilty of negligence; and, in response to another question, found that in doing the same act he was not guilty of contributory negligence. In response to special issues requested by appellant and given by the court, the jury also found that appellee's injuries did not result from an accident, and that they were not the result of one of the risks incident to his employment.

Appellant duly assigned as error all of the matters herein discussed, and upon such assignments duly predicated responsive supporting propositions.

Appellee's contentions are that error was committed (1) in the manner in which special issue No. 1 was submitted to the jury, in that said issue submitted two separate and distinct questions of fact; and, further, because said issue as framed constituted an erroneous construction of the Safety Appliance Act as applicable to this case; (2) that the condition of the coupling apparatus was not a proximate cause of the injury sustained by plaintiff, and the question as to whether or not said coupling apparatus would automatically couple by impact was not a material issue to be determined by the jury; (3) because of the failure of the court to submit all material issues raised by appellant's answer and the evidence forming a part of appellant's defense; (4) the verdict of the jury being contrary to the evidence and overwhelmingly against the testimony, the court should have granted appellant's motion to set aside findings of the jury; (5) because of error in the admission of certain testi-

mony; (6) the verdict of the jury is excessive in amount.

These contentions will be discussed in the order stated above.

Special issue No. 6 reads as follows:

"Were the cars which plaintiff was endeavoring to couple together at the time in question equipped with couplers which, in the condition they were in at that time, would couple automatically by impact without the necessity of plaintiff going between the cars?"

[1] The form in which this issue is submitted is not subject to the criticism urged against it by appellant, for it submits only one controverted issue. The evidence that the cars were equipped with couplers of the character required by the statute is undisputed. The deficiency in this respect charged against appellant was in reference to whether or not the automatic coupling device on the cars was in such condition at the time as that the cars would couple automatically by impact without the necessity of appellee going between the ends of the cars. The statute determines the test to be applied, and that is, Can the work be done "without the necessity of men going between the ends of the cars?" If the coupling can be effected without a switchman exposing himself to this danger, then there is a compliance with the demands of the statute; if it cannot be made automatically but requires the switchman to go in between the cars, then there is a violation of this statute. The question submitting this issue was very aptly worded and fairly stated the one issue in this respect upon which the jury was required to pass.

[2] It is contended that there is placed by this question a greater burden upon appellant in regard to the condition of the coupling appliance than is required by the statute. The statute is as follows:

"On and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." U. S. Comp. St. § 8606.

Appellant's contention in this respect being that only in the event that the cars are to be uncoupled does the statute require that the coupling appliance shall be in such condition that the cars can be uncoupled "without the necessity of men going between the ends of the cars," and that this clause has no application to the coupling of the cars.

We cannot agree with this contention, and the courts have not so construed this statute, though its wording is such that there might perhaps be permitted the narrow construction contended for. The danger confronting one in going in between the ends of cars to make a coupling is precisely the same as the danger confronting one in going in between the ends of the cars to uncouple them. It was to protect employés and avoid this danger that this statute was enacted. It would indeed be a narrow, if not a strained, construction, to hold that Congress intended that only the danger flowing from the performance of one of these duties by a switchman should be averted, while the same danger flowing from another and kindred duty should not be averted. We therefore hold that this statute requires common carriers to equip their cars with automatic couplers which will both couple and uncouple without the necessity of men going in between the cars. Johnson v. S. P. Ry. Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; Chicago, M. & St. P. Ry. Co. v. Voelker, 129 Fed. 522, 65 C. C. A. 226, 70 L. R. A. 264.

The requirement of this statute is absolute. It imposes upon railroad companies engaged in interstate commerce the absolute duty of seeing that all cars used in such commerce that are moved by it are, when so moved, equipped with coupling device in such condition that it will couple automatically by impact, and so constructed that both the coupling and uncoupling from adjoining cars can be made without the necessity of a person going in between the cars. The courts have held that it is no defense to an action for violation of this act that the carrier was ignorant of this fact, or that it exercised ordinary care to keep the coupling appliance in working condition. Chesapeake & Ohio Ry. Co. v. U. S., 226 Fed. 683, 141 C. C. A. 439. This disposes of the first three grounds upon which appellant relies for reversal of this case.

[3] Was there error of the court in refusing to submit the following requested issues: (1) Immediately before going between the cars, did plaintiff give the "come ahead" signal, followed by a "stop" signal? (2) At and before the time plaintiff was injured, was the train operated on signal given by the plaintiff? (3) At the time plaintiff was injured was the train being moved in obedience to a signal, or signals, given by the plaintiff?

As these questions are framed, they apply only to evidentiary matters, each of them bearing on the ultimate issue, decided by the jury, whether or not on the occasion in question appellee was himself guilty of negligence when he went between the cars. A finding by the jury on all of these issues favorable to appellant would not determine the ultimate issue as to whether the appellee was guilty of contributory negligence.

Appellant's plea of the contributory negligence of appellee is as follows:

"This defendant says that, if plaintiff was injured in any manner as set out and alleged in said petition, then that such injuries were proximately caused and brought about by plaintiff's own negligence and want of ordinary care."

This is a very general allegation of appellee's negligence. It is more general, in fact, than the court submitted this issue.

Question No. 6, submitted and passed upon by the jury, reads:

"Was plaintiff, in going between the cars and placing his hand on the coupling appliance on the occasion in question, guilty of negligence as that term has been defined?"

Again the court submits this issue in the following language:

"Question No. 8. Was plaintiff in going between the cars and placing his hand on the coupling apparatus of the car upon the occasion in question guilty of contributory negligence as that term has been defined?"

Ordinarily an appellant cannot complain if the issue of contributory negligence is submitted in language no more general in terms than is the plea. In the two submissions given above the court submits to the jury the issue of appellee's negligence upon the only ultimate fact upon which his negligence could be predicated, to wit, the going in between the cars. Whether or not he was guilty of such negligence would be determined by the circumstances in evidence surrounding the specific act of his going in between the cars. At most, the issues requested only bear on the evidentiary facts surrounding this act. In order that the jury might not be misled, the court submits this issue, both as to the negligence of appellee and as to his contributory negligence. We therefore hold there was no error in refusing the requested instruction.

[4] The submission of the requested issues bear only on the second ground of negligence charged against appellant, to wit, the sudden movement of the cars by appellant's employés, without warning to appellee, while he was between them and engaged in the work of making the coupling. These issues have no application to negligence predicated on a charge of appellant's violation of the Safety Appliance Act. The jury found in favor of appellee as to both grounds of negligence. The judgment in appellee's favor could have been entered on the finding of the jury on either of these grounds, and, if the court had committed error in refusing to submit an issue that bore alone on the second ground of negligence, it would not call for a reversal of this case, because judgment could be entered on the first ground of negligence found by the jury without regard to any issue involved on the second ground.

[5] There is nothing in the contention that the verdict of the jury is so contrary to the preponderance of the testimony as that the trial court committed reversible error in refusing to grant appellant's motion to set aside the findings. Appellee testified positively, both as to the defective condition of the coupling appliance on the cars it had become his duty to couple, and also as to his signal to stop the movement of the cars when he determined that it was necessary, because of the defective coupling appliance, for him to go in between them to effect the coupling, and that, without any signal from him, or any notice to him after he had gone in between the cars to perform this duty, they were suddenly shoved together and he was thereby injured.

[6] Witnesses for appellant testified that, when the coupling apparatus was examined after the injury, it was found to be in such condition as that the cars coupled automatically by impact. This is not in conflict with appellee's testimony on this question, because it leaves out of account his work in adjusting the draw bar before the car was moved back. Appellant's witnesses did testify in contradiction to appellee that, though appellee gave the stop signal, he followed it with a "go ahead" signal, and that it was in obedience to this signal that the cars were moved. This was a conflict strictly within the province of the jury, and appellant cannot complain in this court because the jury solved this conflict favorable to appellee.

To our mind, when all the facts and circumstances are considered, the preponderance of the evidence is in favor of appellee's contention. Appellee was an experienced brakeman; he signalled the train to stop; when it stopped he went in between the cars and placed himself in a position that any forward movement of the cars would almost inevitably result in his injury. To say that either while between the cars or while in the act of placing himself between the cars he gave a signal, the inevitable result of which would be to his hurt, is at war with human experience and observation. This assignment of error is overruled.

Complaint is made in two separate bills of exception as to the ruling of the court on the admission of evidence. In the one instance the evidence received over the objection of appellant was evidence tending to show that appellee was not guilty of negligence as charged by appellant on the occasion in question, and was clearly admissible as evidence on this issue. The other is in reference to evidence adduced in cross-examination of a physician who testified at the instance of appellant. If the question objected to were subject to the objection made, the answer in response to the question was so favorable to appellant that no injury could possibly have resulted by the ruling of the court. These assignments of error are overruled.

[7] Complaint is made that the verdict is excessive. In this we do not agree. While it is large, the amount is not sufficient to even indicate that the jury was moved by any improper motive in rendering a verdict

for this amount, and this assignment of error is overruled.

Finding no reversible error, we are of the opinion this case should be affirmed.

Affirmed.