## TRADERS & GENERAL INS. CO. v. BLANCETT.

### No. 13383.

Court of Civil Appeals of Texas. Fort Worth.

May 29, 1936.

Rehearing Denied Sept. 4, 1936.

T. R. Boone, of Wichita Falls, and Lightfoot & Robertson, of Fort Worth, for appellant.

Grindstaff, Zellers & Hutcheson, of Weatherford, for appellee.

SPEER, Justice.

This suit was instituted by the Traders & General Insurance Company as plaintiff in the form of an appeal from an award by the Industrial Accident Board in favor of C. Blancett, growing out of an alleged accident resulting in injury to Blancett while in the employ of the Peckham Oil Company as an oil well driller, on June 21, 1934.

C. Blancett answered the petition and filed a cross-action against the plaintiff for compensation under the Workmen's Compensation Act (Vernon's Ann.Civ.St. art. 8306 et seq.)

The pleadings of the parties were sufficient to give jurisdiction to the district court of Archer county: The employment of Blancett, the details of how the accident happened, the liability of plaintiff, that Blancett was accidentally injured, resulting in his permanent incapacity to labor, together with facts pleaded sufficient to entitle him to a lump-sum settlement.

The plaintiff responded to the cross-action with a supplemental petition containing a general denial of the cross-action, and specifically pleading that if the defendant was suffering from any injuries, they were caused from a previous accidental injury to Blancett, for which it was not responsible.

No question is raised by either party as to the sufficiency of the pleadings of the other, and having observed none ourselves, we deem it unnecessary at this time to mention them further.

We shall refer to the parties as plaintiff and defendant as they appeared in the trial court.

The testimony introduced by defendant in support of his cross-action tended to show that he had been an oil well driller for a number of years prior to the accident on June 21, 1934, and that on that date he was operating a rotary drill for the Peckham Oil Company, and that his work required him to stand a good portion of the time on the derrick floor or platform, but that it often became necessary for him to pass from this floor onto the ground and about the premises to look after such matters as were necessary to the drilling. That this platform was about 2½ feet higher than the ground, and that there was a board or step at one side used to enable persons to pass easily from the ground to the platform, or vice versa. That within two or three feet of this step there was a piece of equipment known as a mud pump or "mud hog." It was higher than the surface of the ground roundabout, was of metal, and had metal bolts projecting up a slight way from its top. It became necessary for the defendant to leave the platform where he was working and go down the step to the ground, with a view to cutting off a water supply. The platform and step were wet, muddy, and

slick. As he stepped from the platform onto the board between the platform and the ground, his foot slipped and he fell forward across the mud pump, in a position that his abdomen struck the pump and the bolts projecting therefrom, causing, as he claims, the injuries resulting in the damages sued for.

The plaintiff developed, upon cross-examination and from other sources, the fact that defendant had previously received an injury on April 4, 1927, for which he had sued, claiming total and permanent incapacity to labor, and recovered judgment covering 401 weeks, the maximum time allowed by law for a recovery under the Workmen's Compensation Act (Vernon's Ann. Civ.St. art. 8306, § 10); that in 1929 the defendant compromised that case and received payment.

The plaintiff also offered testimony tending to show that defendant had suffered attacks with his appendix and with his gall bladder prior to June 21, 1934.

On the next day after defendant received his injury, he was taken to a Wichita Falls hospital, where he was operated upon. The doctors admit that they did not know what defendant's trouble was prior to the operation, but that he was suffering such intense pain and was so critically ill that it became necessary that they make an incision to ascertain his trouble. They found his appendix and gall bladder involved and removed them, and by accident in making an exploratory examination found a small piece of steel resembling a wire lying between his small intestines.

It was uncontroverted that defendant at the time of the trial had made but little progress toward total recovery, had lost about eighteen pounds in weight, with the apparent controverted issue being whether the operation was rendered necessary by the accident, or was it brought about by previous physical defects in the defendant?

The case was submitted to a jury on special issues, along with definitions and explanations about which there seems to be no complaint.

The facts found by the jury in response to special issues were as follows:

(1) Defendant sustained personal injuries on the 21st day of June, 1934.

(2) Defendant sustained personal injuries while he was engaged in the course of his employment for Peckham Oil Company on June 21, 1934.

(3) That the injuries sustained by defendant on the date mentioned were the result of an accident.

(4) The injuries received by defendant occurred at a time when he was in the employ of the Peckham Oil Company.

(5-a) "Do you find from a preponderance of the evidence that the defendant C. Blancett became totally incapacitated for work on the 21st day of June, 1934?" Answer: "Yes."

(5-b) "Do you find from a preponderance of the evidence that such total incapacity for work, if any, of said Blancett, has continued up to the present time?" Answer: "Yes."

(5-c) "Do you find from a preponderance of the evidence that such total incapacity for work, if any, of the said C. Blanchett, will continue in the future?" Answer: "Yes."

(6) "Do you find from a preponderance of the evidence that such total incapacity for work, if any, of the said C. Blancett, is permanent?" Answer: "Yes."

"If you have answered special issue 5-a 'yes' and have answered special issue No. 6 'yes,' then you need not answer special issue No. 7, but if you have answered special issue No. 5-a 'yes' and special issue No. 6 'no,' then you will answer the following special issue No. 7."

(7) "From a preponderance of the evidence fix the number of weeks, if any, of such total incapacity for work, if any, of said C. Blancett, from and after June 21, 1934." Answer: No answer.

(8-a) "Do you find from a preponderance of the evidence that C. Blancett's incapacity for work, if any, since the 21st day of June, 1934, has been only partial incapacity for work?" Answer: "No."

(8-b) "Do you find from a preponderance of the evidence that C. Blancett's incapacity for work, if any, he has, at the present time, is only partial incapacity for work?" Answer: "No."

(8-c) "Do you find from a preponderance of the evidence that C. Blancett's incapacity for work, if any he will have, will be only partial incapacity for work in the future?" Answer: "No."

Issues 9-a, b, c, and 10 were conditional inquiries and were not answered.

(11) The injuries sustained by defendant on June 21, 1934, were the producing cause of the incapacity for work of the defendant.

(12) The defendant's incapacity for work was not due solely to prior injuries received by him on April 4, 1927.

(13–a) The injuries received by defendant prior to June 21, 1934, have not contributed to defendant's incapacity to work since that date.

Issue No. 13–b was conditional and not answered.

(14–a) The prior injuries received by defendant are not now contributing to the incapacity of defendant to work.

Issue No. 14–b was conditional and not answered.

(15–a) The injuries received by defendant referred to in issue No. 12 (in 1927 and 1923) will not contribute to defendant's future incapacity to work.

Issue No. 15–b was conditional and not answered.

(16–a) The incapacity of defendant to work since June 21, 1934, was not due solely to disease or infections not naturally resulting from the injury, if any, received on said date.

(16-b) The incapacity of defendant to work extending from June 21, 1934, to this date (the date of the trial) was not due solely to disease or infections not naturally resulting from the injuries received by him on said date.

(16–c) The future incapacity of defendant to work will not be due solely to disease or infections not naturally resulting from the injury received by him on June 21, 1934.

(17) The incapacity of defendant to work is not due solely to the combined effects of diseases or infections not resulting from the injury sustained by him on June 21, 1934, and prior injuries referred to in special issue No. 12 (in 1927 and 1923).

(18) "Do you find from a preponderance of the evidence that this is a special case in which manifest hardship and injustice will result to C. Blancett if his compensation, if any, is not paid to him in a lump sum?" Answer: "Yes."

(19) "Do you find from a preponderance of the evidence that the total incapacity to work, if any, of the said C. Blancett will not cease in the future?"

Answer: "Blancett total incapacity will not cease."

Upon these issues the court entered judgment for defendant for compensation in the lump sum of $5,340.58 for the full term of 401 weeks less four weeks shown to have been previously paid. The judgment further provided that the award of the Industrial Accident Board involved in this suit should be vacated, set aside, and held for naught.

Plaintiff objected to this judgment and has perfected its appeal under seven assignments of error, all properly supported by propositions and statements in some instances sufficient to authorize us to consider them.

The first three assignments complain that the court should have given a peremptory instruction in plaintiff's favor, and the propositions predicated thereon raise a very interesting point in the case; it being that since the undisputed facts show that the defendant received the injury in 1927, for which he claimed total incapacity and collected compensation therefor, he could not thereafter claim that on June 21, 1934, he likewise received an injury which in turn totally and permanently incapacitated him to labor.

The record before us does not contain a requested peremptory instruction by the plaintiff, but we find in its objections and exceptions to the issues presented reference to the fact that it had previously presented one, and at the time of presenting its exception again insisted upon it being given. We do not consider such an objection and exception a sufficient compliance with the statutes in this respect, and in the absence of such requested instruction we are not authorized to consider an assignment of error that one was not given; unless it be considered upon the theory that the testimony before the court was not sufficient to warrant the submission of some other issue submitted.

Article 2190, Rev.Civ.Statutes, as amended by Acts 1931, c. 78, § 1 (Vernon's Ann. Civ.St. art. 2190), now reads in part: "Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission has been requested in writing by the party complaining of the judgment. * * * A claim that the evidence was insufficient to warrant the submission of any issue may be complained of for the first time after verdict, regardless of whether the submission of such issue was requested by the complaining party."

It is a well-settled rule in this state that this court is not authorized to review on appeal an assignment of error that the

court failed to submit an issue when no such issue was requested to be submitted. Article 2190, Rev.Civ.Statutes, as amended (Vernon's Ann.Civ.St. art. 2190); Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183; and many decisions, to the same effect could be cited.

■ We construe the last-quoted provision of article 2190 to mean something more definite than a blanket objection that there were no controverted issues of fact ·in the case and therefore none should have been submitted. It cannot be relied upon to take the place of a request in writing for a peremptory instruction. It was intended, by that provision, to give the complaining party a right to have reviewed the submission of an issue when there was no testimony to support it, and that, without having first made a written request for the converse of the issue complained of. However, since we have decided the assignments must be overruled upon even other grounds, we will give and discuss plaintiff's contention with reference to the question raised.

It is contended by plaintiff that defendant could not have been totally and permanently incapacitated by both injuries shown to have been received by him, the one in 1927 and the other in 1934; that it must necessarily follow that defendant's claims on one or the other occasion were false and fraudulent, and counsel reasons that because Blancett recovered judgment and collected in the first suit, he should not be heard to say he practiced a fraud in that suit. This argument is made in support of the theory that defendant should not recover in the instant case. As we view the question raised by plaintiff, even if it were conceded there· was a fraud practiced by defendant in one or the other of the two cases, and we should conclude the fraud, was practiced in the first, there is nothing we could do about it at this time. We do not find it necessary to determine that there was a fraud perpetrated in either case. Such issues as "total, permanent incapacity" to labor are largely determined by opinions of the witnesses, and these opinions may come from the most reliable persons available to the court, and yet may in the end prove to be erroneous. Under such conditions, we are not prepared to say that such a recovery would be a fraud, because, indeed, the judgment would be based upon the best judgment of the persons conceded to be in a position to testify on the point. Irrespective of the recovery of compensation by defendant for the injuries received in 1927, and regardless of the fact that he compromised his lawsuit in 1929 and accepted less in payment than the amount of his recovery, the undisputed testimony shows that he was not totally and permanently incapacitated to work, for he went back to his work in 1929 and continued until June 21, 1934. But to concede, if necessary for the sake of argument, that defendant's recovery in 1927 was the result of a fraud perpetrated by him on some insurer, it does not follow that plaintiff, for that reason, should escape liability in the case at bar. If this were permitted, plaintiff would be collecting from defendant the moneys wrongfully paid by some other insurer. We are cited by plaintiff to the case of Home Life & Accident Co. v. Corsey (Tex. Civ.App.) 216 S.W. 464, 465, for an authority supporting its contention. We admit the original opinion by the court apparently supports the contention of plaintiff wherein it was said: "To permit him to recover from appellant compensation for total incapacity caused by the injuries received on April 29th and existing during the time he was receiving such compensation for injuries received December. 16th would be to sanction the perpetration of a fraud in one or the other case."

■ By reference to the opinion cited, it will be observed that on motion for rehearing the court said: "We further think we erred in our former holding that plaintiff could not recover for total disability for the time allowed him by the jury because of the fact that he had for a portion of said time received compensation for total incapacity from a different insurance company, and for an injury sustained subsequent to the injury of which he complains in this suit. The fact that he may have obtained compensation for the subsequent injury to which he was not entitled cannot defeat his right to recover in this suit."

Assignments 1, 2, and 3 are therefore overruled.

Assignments 1–a and 2–a each complain of the submission of special issue No. 18 as being duplicitous and multifarious. It will be noted by the issue as above quoted that the court inquired of the jury whether this is a special case in which manifest hardship and injustice will result to de-

fendant if his compensation, if any, is not paid to him in a lump sum.

There are 141 "objections and exceptions" to the court's charge shown to have been made by plaintiff, and Nos. 80 and 81 alone are devoted to special issue No. 18, and neither of them refer remotely to the issue as being duplicitous and multifarious. Article 2185, Rev.Civ.Statutes, provides, among other things, that "all objections not so made [in writing] and presented [to the court] shall be considered, as waived."

However, "objection and exception" No. 104, as shown by the record, evidently was meant to cover special issue No. 18, although it refers to special issue No. 23 when there is no such numbered issue. The objection complains that special issue No. 23 is duplicitous, in that it submits two issues in one, first, whether a manifest hardship, and, second, whether it would be an injustice to fail to pay to the defendant in a lump sum rather than in weekly compensation. In view of the fact that the language of the objection specifies the language of the issue referred to, and since issue No. 18 is the only one in which such language is used, we are treating the objection as being sufficient to call the court's attention to the fact that objection was made to special issue No. 18.

It is contended by plaintiff that the question of whether failure to pay in a lump sum would work a manifest hardship on defendant should have been submitted to the jury in one issue, and whether failure to pay in a lump sum would work an injustice to defendant should have been submitted in another. Under the circumstances and record in this case, we cannot agree with plaintiff's contention.

The Workmen's Compensation Act, article 8306 § 15, Rev.Civ.Statutes, among other things provides: "In special cases where in the judgment of the board manifest hardship and injustice would otherwise result, the board may compel the association in the cases provided for in this section to redeem their liability by payment of a lump sum as may be determined by the board."

In Speer's Special Issues, p. 128, the author, in discussing the necessity of submitting only single issues, says: "It is not always the case that the submittable issue consists of a single simple fact. It may consist of a primary fact as limited or qualified by some other fact consideration, yet on the whole be a single issue. In

such case, the one real issue can often be submitted, with the limiting or qualifying facts stated in connection with the one real issue to be submitted."

■ Under the pleadings and testimony offered, defendant was entitled to have the jury determine if he was entitled to have such sum as should be awarded to him paid in a lump sum rather than in weekly compensation; to entitle him to such lump-sum payment, it was incumbent upon him to show by a preponderance of the evidence that payment in weekly installments would result in a manifest hardship and injustice to him. It was not sufficient for him to show that any other form of payment than a lump sum would work a "manifest hardship" on him, but was required to establish by the evidence that an "injustice" to him would result therefrom. These are the requisites of the statute.

In connection with this issue, the defendant and his wife testified that they had no property, not even a home; that they owed debts, the defendant stating they owed about $1,000 incurred since he received the injuries; and the wife further testified that they wanted to use the money to pay their debts, and to have her husband treated, and if there was any left they wanted to buy some kind of a business out of which she could make a living for herself and family.

The jury answered issue No. 18 in the affirmative, thus finding that it would work a manifest hardship and injustice to the defendant if he should not be awarded a lump-sum settlement for compensation that should be given him. The plaintiff offered no testimony whatever in an effort to contradict that offered by defendant on the point. Defendant's evidence stands unchallenged and undisputed, and there are no circumstances before us tending to show it is not absolutely true. The jury in effect found it was true.

■ We have already seen that both fact elements, that is, that any other kind of a settlement than a lump-sum payment would work both a manifest hardship and injustice to defendant, must exist to entitle him to a favorable jury finding in response to special issue No. 18, and the submission of the question in the words of the statutes, under the circumstances surrounding this case, did not constitute error.

When there is no controverting testimony before the court as to either of the fact elements entering into the issue, and

there is sufficient evidence to warrant the submission of the issue, we can see no good reason for the court to divide the question up into inquiries covering each element of the issue, and then thereafter group the several evidentiary facts with their answers to arrive at a judgment.

In the case of City of Abilene v. Moore (Tex.Civ.App.) 12 S.W.(2d) 604, 605 (writ refused), a special issue was given in this language: "At the time and place plaintiff was injured (if she was injured), was the ditch open and exposed without sufficient lights to warn the plaintiff of the location of the ditch?" The objection was made that two issues were submitted in one. The court overruled the assignment and stated: "In the instant case the entire group of facts submitted in the issue must concur to constitute one act of negligence, and, as noted, there was no fact issue made by the evidence, except as to the question of whether the exposed ditch was lighted."

In the case before us there was no issue made by the evidence, all that was left for determination by the jury being: Was the testimony offered by defendant to be believed? The jury found it to be true.

In Clifton Mercantile Co. v. Gillaspie (Tex.Civ.App.) 7 S.W.(2d) 906, affirmed by Supreme Court, 15 S.W.(2d) 607, the following issue was submitted and complained of as being duplicitous: "Did O. C. Orbeck, without the knowledge and consent of Tom Gillaspie, after the execution of the note for $657, dated August 1, A. D. 1926, add to the same the words: 'Pay $50.00 per month'?" In discussing the assignment the court said: "All the testimony introduced by it [appellant] tended to show that said words were added to said printed form and thus included in said note before it was signed by appellee. This was the only controverted issue. It was clearly stated in the special issue as submitted. * * * The facts inquired about therein were so closely related to each other that they could be properly included in the same issue and separate submission thereof was unnecessary. We do not think that appellant was prejudiced by the form of the issue so submitted," citing St. Louis-San F. & T. R. Co. v. Ussery (Tex.Civ. App.) 259 S.W. 275, 277, and many other similar holdings.

This court held in the case of Texas Employers' Insurance Association v. Ray (Tex.Civ.App.) 68 S.W.(2d) 290, that the words "hardship" and "injustice" were not synonymous, and that both elements must be proven and submitted to the jury, and the omission of the latter from the issue was reversible error; but it will be observed the question of multifariousness of the issue, if both elements had been submitted in one issue, was not considered by the court.

■ There was sufficient testimony before the court to authorize the submission of this issue to the jury. The statute requires that it shall be determined if a failure to pay the award in a lump sum will work a manifest hardship and injustice on the defendant. There was no testimony offered controverting the truth of that offered by the defendant; there are no circumstances in the record which tend to show defendant's testimony was not to be believed. The jury found, in effect, that it was true. In the language of the court in the Gillaspie Case, supra, "we do not think that appellant was prejudiced by the form of the issue so submitted." For the reasons given, we think no error was committed by the court in the submission of special issue No. 18, and the assignments questioning it are overruled.

By assignment of error 3–a, plaintiff complains that the court did not submit to the jury the matter of partial incapacity to labor; that because of the conditions given immediately preceding special issue No. 7, which reads, "If you have answered special issue 5–a 'Yes,' and have answered special issue 6 'Yes,' then you need not answer special issue No. 7, but if you have answered special issue No. 5–a 'Yes' and special issue No. 6 'No,' then you will answer the following special issue No. 7," plaintiff was deprived of the right to have the jury determine the number of weeks, if any, the defendant was totally incapacitated to labor.

■ The general denial pleaded by plaintiff in response to defendant's cross-action was sufficient to entitle it to the introduction of testimony, if it could produce such, that defendant was not permanently incapacitated to labor, which in turn would have entitled plaintiff to have the issue submitted to the jury. Indemnity Insurance Co. v. Boland (Tex.Civ.App.) 31 S.W. (2d) 518; Traders & General Insurance Co. v. Patton (Tex.Civ.App.) 92 S.W.(2d) 1083. Nor would the fact that the jury, in the preceding issues, answered that defendant's incapacity was permanent, de-

prive it of the right to have the question of temporary incapacity submitted, if there had been any testimony to warrant it.

Plaintiff does not cite us in its brief to any testimony offered upon the trial, raising the issue of temporary incapacity, and we have carefully read the statement of facts and find none.

■ The rule in this state is so well settled that a party is entitled to have every issue raised by his pleading and evidence submitted to the jury for determination that we think it unnecessary to cite authorities on the point. But to entitle one to this, it is as essential that there be evidence before the court as it is that it be pleaded in the first place.

■ As before stated, the complaint is that under the restrictions in the charge the jury was not permitted to determine the number of weeks, if any, the defendant would be totally incapacitated to labor subsequent to the date of the accident. By issues 8–a, 8–b, and 8–c and the answers to each, the jury found defendant's incapacity to work since June 21, 1934, had not been partial; that his incapacity to work at the time of the trial was not partial; and that his incapacity to work in the future would not be partial. These answers and findings cover every conceivable period of time in which plaintiff has an interest, and if they had not been so submitted and answered, plaintiff would have just grounds to complain, as in this assignment, had it introduced testimony raising the issue, but in the absence of such testimony and in view of the subsequent issues and answers, we think there was no error in conditionally withdrawing issue No. 7 from the jury.

■ Assignment of error 4-a, supported by a sufficient bill of exception, complains of the action of the court in permitting defendant, a nonexpert, to testify over plaintiff's objection that he had not been able to do any work since he received his injury. The testimony of defendant during the trial discloses he gave in rather minute detail how he received his injuries, the effect of the injuries upon him in the way of pain and suffering, and we think in view of this that there was no error in permitting him to further testify that he had been unable to work since receiving the injury. Moreover, Dr. Walker testified as follows:

"Question: This man the evidence shows was a driller at the time you examined him, could he have gone out and done the work of a driller as he had been doing? Answer: No, I don't think so."

"Question: Is he ever going to be able to do manual labor? Answer: I don't think so."

"Question: In your opinion, is he totally and permanently disabled so far as manual labor is concerned? Answer: Yes, sir, he is."

In the case of Petroleum Casualty Co. v. Bristow (Tex.Civ.App.) 35 S.W.(2d) 246, 252 (writ dismissed), a similar question arose. The question asked of the defendant was: "In your opinion will you ever be able to work again?" The question and its answer were objected to and presented for review on a bill of exception. The court held: "The weight of authority in this state is that an injured party claiming damages may, after describing the nature and extent of his injuries, and the effect thereof upon his physical system, give his opinion as to the probable effect of such injuries upon his earning capacity in the future," citing Texas Employers' Insurance Ass'n v. Davies (Tex.Civ.App.) 6 S.W.(2d) 792, and cases there cited.

We therefore overrule plaintiff's assignments of error and affirm the judgment of the trial court.