Phoenix Assurance Company of London v. Munger Improved Cotton Machine Manufacturing Company.

No. 714. Decided November 28, 1898.

**1. Insurance—Cancellation—Return of Premium.**

An insurance company, in order to avail itself of a right reserved in the policy to cancel it, retaining "only the pro rata" premium, must tender back such premium in money where it has received it in money from its agent, though the insured had given his note, not cash, to the agent. (P. 303.)

**2. Trial by Jury—Charge—Verdict—Special Issue.**

Where several defenses were pleaded, it was not error to direct the jury, if they found for defendant, to specify upon what ground they based their finding. ( P. 303.)

**3. Insurance—Warranty.**

A warranty in an insurance contract is a statement made therein by the insured which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true. (P. 303.)

**4. Same—Warranty or Representation—Policy Construed.**

See statements in application for and policy of insurance, as to incumbrances on property, manner of operation of gin, and precautions against fire, construed to be representations, not avoiding the policy unless material, though referred to therein as "warranties." (Pp. 303, 304.)

ERROR to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

The cotton machine company sued the insurance company and recovered judgment against it for loss under a policy of insurance. The insurance company prosecuted writ of error in the Court of Civil Appeals and, on affirmance of the judgment there, obtained writ of error from the Supreme Court.

*Thompson & Wood,* for plaintiff in error.—Where, in a contract, the right is reserved in either party to cancel same by request to the opposite party, such request will of itself effect the cancellation stipulated for by the contract, and the evidence that such request has been given by the insurance company and received by the insured prior to the occurrence of the fire being uncontradicted, the court should have instructed the jury to return a verdict for defendant. Insurance Co. v. McKinnon, 59 Texas, 509; Stone v. Insurance Co., 105 N. Y., 543; Iron Co. v. Insurance Co., 127 N. Y., 608; Walthear v. Insurance Co., 37 N. Y. Supp., 857.

Where a cause is submitted to the jury generally, no special issues being asked or defined, it is proper for the jury to bring in a general verdict for either the plaintiff or defendant, and it is not the proper practice to require them to state by what method of reasoning they arrive at such verdict. A verdict must be either general or special, and it is error to mix the two kinds of verdict in one and tends to confuse the jury. Dwyer v. Kalteyer, 68 Texas, 554; Rev. Stats., arts. 1328-1331.

The taking the sworn examination of the assured under the terms of the policy could not be considered a waiver of any breaches of the policy of which the defendant did not have notice or knowledge prior to the time of the taking of such sworn examination, and the question of whether or not defendant did have notice of facts constituting breaches of the policy, was a question of fact that should be submitted to the jury. Insurance Co. v. Bass, 38 S. W. Rep., 1119; Walker v. Insurance Co., 35 N. Y. Supp., 374; Match Works v. Assurance Co., 66 N. W. Rep., 525.

The clause in the contract in reference to incumbrances on the insured property was an express affirmative warranty on the part of the assured, and their concealment as to the amount of the incumbrances constitutes a complete bar by plaintiff to any recovery on the policy, and the court erred in refusing to charge the jury to that effect. 49 Texas, 5; 82 Texas, 637; 1 May on Ins., arts. 156, 157.

The clause in the policy and in notice to applicant on application with reference to continuously keeping barrels filled with water, etc., is an express promissory warranty on the part of the assured, the strict

compliance with which is a condition precedent to assured's right of recovery on the policy, and the failure on assured's part to strictly comply with same constitutes a complete bar to any recovery under said policy; and the court erred in refusing to so charge the jury, and in charging the jury that this defense would not avail unless defendant had shown by a preponderance of evidence that the barrels filled with water and buckets stipulated for in the contract, were not in the gin at the time of the fire. Insurance Co. v. Thompson, 21 S. W. Rep., 468; Insurance Co. v. White, 24 S. W. Rep., 425; Insurance Co. v. Eddy, 49 Ill., 108; Houghton v. Insurance Co., 41 Am. Dec., 489.

The clause in the contract of insurance herein sued on in reference to prohibiting night work, without special permission in writing on the policy, is an express promissory warranty on the part of the assured, and their failure to strictly comply with the requirement of said clause constitutes a complete bar to any recovery by plaintiff under said policy, and the court erred in failing and refusing to so hold. Insurance Co. v. Thompson, 21 S. W. Rep., 468.

*Bell & Atwell* and *Coke & Coke,* for defendant in error.

DENMAN, Associate Justice.—This suit was brought and judgment recovered by defendants in error, as assignees of B. D. Atwell & Son, against the insurance company upon insurance policy, and judgment having been affirmed in the Court of Civil Appeals, said company has brought the cause to this court upon writ of error. We will set out such portions of the application and policy as we deem pertinent to the questions we will discuss and will omit such parts as are irrelevant thereto.

The application was in substance:

"I hereby make application to you to insure me against loss or damage by fire from noon August 12, 1895, to noon August 12, 1896, in amounts and on property as follows: [Here follows a list of various pieces of property upon which insurance was desired, the value of each piece as well as the insurance wanted thereon being stated separately, the same including a ginhouse and various parts of the machinery situated therein.] Said property located as per diagram on last page on land of B. D. Atwell, being in the town of Ferris, Ellis County, Texas. The values stated are the true cash values. I have carefully read the whole of 'Notice to Applicant,' printed on the following page of this application, and do make the warranties and accept the conditions therein expressed.

"To your questions following, I answer as follows: [Then follow a number of questions in reference to machinery, such as its make; power of the engine and boiler, whether stationary or not, whether second-hand or not, cost, height of smokestack above peak of roof, when buildings were erected, their cost, etc.]

"Tank and Hose.—Is there an elevated tank of 2000 gallons capacity,

and fifty feet of good hose, of not less than one and one-half inches in diameter? Ans. 2500 tank hose and piping 75 ft.

Incumbrance or Indebtedness.—1. Is there any on above described property or on the land on which it stands? If so, (1) on what; (2) to whom; (3) in what amount; (4) when due? Ans. Owe Heatherington & Nason $800, Munger Mach. Co., $1960; Adams Mach. Co., $550; one-half due this year, one-half due next year.

"I herewith warrant and covenant the correctness and truth of each and every one of the foregoing answers and representations and present them as the basis of the insurance hereby applied for, and I further warrant and covenant that the conditions existing at the time of the signing of this application, as set forth in my answers to the different questions, shall continue through the existence of any insurance to be issued thereon or that of any insurance hereafter to be issued upon the faith of this application.

(Signed)                    "B. D. Atwell & Son, Applicant."

Under head of "Notice to Applicant" on the application, is the following writing:

"No liability will be assumed by Phoenix Assurance Company of London on any ginhouse risk, nor on any part of one, except upon each of the following warranties by the assured, viz:

"Ownership and Title.—That the assured is the sole and undisputed owner absolutely and in fee simple of the land on which buildings stand.

"Night Work Prohibited.—That he does not, and without special permission in writing on the policy, will not, permit the gin to be operated at night.

"Water to be Kept.—That a barrel and two buckets, each always filled with water, shall be continuously kept within ten feet of each ginstand and in same room therewith, to be used in case of fire.

"It will be a condition of every policy, that in no case shall the company be held liable for loss or damage on any item in an account greater than three-fourths of the loss thereon, nor, in the event of other insurance, for more than its pro rata share of such three-fourths.

"This condition and each of these warranties will appear in every policy which the Phoenix Assurance Company of London will write on any ginhouse risk, and no agent is authorized in any way to waive any of them, except that an agent may, in writing, grant permit for night work, provided that such permit shall show that proper extra premium has been paid therefor, and that lights shall be from animal or lard oil in stationary closed lanterns, or approved system of incandescent electric light; and provided further, that so much of the last warranty as relates to saw mill and cotton seed oil mill may be waived by special indorsement hereon in writing and payment of proper extra premium therefor."

The policy, as far as pertinent to the question before us, was as follows:

"No. 4,188,414. $4705.

## "PHOENIX ASSURANCE COMPANY OF LONDON.

"In consideration of the stipulations herein named and of two hundred and fifty-eight, seventy-eight one-hundredths dollars premium, does insure B. D. Atwell & Son, of Hutchins, Texas, for the term of one year, from the 12th day of August, 1895, at noon, to the 12th day of August, 1896, at noon, against all direct loss or damage by fire except as hereinafter provided to an amount not exceeding $4705, to the following described property, while located and contained as described herein and not elsewhere, to wit: [Here follows the same list of property, values, and amount of insurance contained in the application.] * * * Reference is hereby made to the application of the assured for this policy, which application is his warranty and is hereby made a part of this contract. [Here follows a series of stipulations relating to the amount for which the company shall be liable and how it shall be ascertained in case of loss.]

"But this policy is made upon the following additional warranties, stipulations, and agreements by which the insured, in accepting it, agrees further to become bound, viz:

"The insured warrants that he is the sole and undisputed owner (except as to cotton held in trust) of the whole of said property and of the land on which it stands; that so far as he knows or believes there are no threats nor any danger of incendiarism, and that he has no reason to suspect any; that the property has been profitable and that he has every reason to believe that it will so continue; that every part of same has been or will be before beginning operations, thoroughly cleaned, and shall, during any ginning season while this policy exists, be kept clean and in good working order; that he does not and will not permit the ginning of wet cotton, nor smoking in or about the ginhouse; that he does not and—without special permit in writing on the policy—will not permit the gin to be operated at night; that a barrel and two buckets, always filled with water, shall be continuously kept within ten feet of each gin stand, and in same room therewith, to be used in case of fire; that he will keep a book containing a faithful record of all cotton put into and taken from the ginhouse, and that such record shall be deposited for safekeeping when not in use in some house other than the ginhouse, at least sixty feet therefrom; that each gin stand has and shall continue to have its own feeder and condenser attached; that neither the plantation on which the property stands nor any article proposed for insurance is incumbered in any way whatsoever for more than its present cash salable value, and that on no article proposed for insurance does assured owe more than his present ability to pay; that cotton is not and shall not be allowed to pass through fans; that engine and boiler, if there be such, are stationary; that there is no flour mill, saw mill, planing mill, cotton seed oil mill, or any manufacturing risk, except grist mill, connected with the ginhouse or within 100 feet thereof; but this warranty, so far as the same

applies to saw mill or cotton seed oil mill, will be waived in any case in which, there being a saw mill or cotton seed oil mill attached to, or exposing the risk, the insured has notified the company or its agent, and has paid for the additional hazard, provided also such payment is evidenced by indorsement in writing on this policy.

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance, or the subject thereof, whether before or after a loss.

"This entire policy, unless otherwise provided by agreement indorsed hereon and added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or invalid, on property covered in whole or in part by this policy; or if the hazard be increased by any means within the control or knowledge of the insured; or if mechanics be employed in building, altering, or repairing the within described premises; or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage; or if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy, by virtue of any mortgage or trust deed; or if any change other than by the death of an insured take place in the interest, title, or possession of the subject of insurance, whether by legal process or judgment, or by voluntary acts of the insured or otherwise, or if this policy be assigned before a loss; or if, any usage or custom of trade or manufacture to the contrary notwithstanding, there be kept, used, or allowed on the above described premises, benzine, benzole, dynamite, ether, fireworks, gasoline, Greek fire, gunpowder, naphtha, nitro-glycerine, or other explosive, phosphorus or petroleum or any of its products, or if the building herein described be or become abandoned or unused.

"In any matter relating to this insurance, no person, unless duly authorized in writing, shall be deemed the agent of this company.

"This policy shall be canceled at any time at the request of the insured, or by the company. If canceled, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy, the company retaining the short rate under its tariff, not less than two months premium on cotton, nor less than six months premium on other parts of the risk; provided, however, that if cancellation be by this company, it shall retain only the pro rata premium."

The company pleaded that the policy was canceled before the fire.

Also, that the property was willfully burned by the assured.

Also that there were incumbrances upon the property other than those stated in the application, and that therefore the policy was void.

Also that the gin was operated at night contrary to the provisions of the policy, and that therefore the policy was void.

Also that a barrel and two buckets, each always filled with water, were not kept within ten feet of each gin stand as provided by the contract, and therefore the policy was void.

It was admitted on the trial that plaintiffs below were entitled to recover unless defeated by some of the matters set up in the answer.

Upon the issue of cancellation, the evidence showed that the assured had paid a portion of the premium and had given his notes to the agent · for the balance, and the agent had paid the entire premium to the company, holding the notes of the assured as his individual property. When the notice of desire to cancel was given just before the fire, there was no tender made to the assured of the unearned premiums, and we are therefore of the opinion that the cancellation was not effectual. It was of no concern to the company that the agent had seen fit upon his own responsibility to take the notes of the assured for the premiums and advance the money to the company and therefore the company could not cancel without returning or tendering the entire unearned premium to the assured, leaving him and the agent to settle the notes as between themselves.

The issue of willful burning, upon conflicting evidence, was submitted to the jury and they decided the question against the company, and we find no error in its submission.

This brings us to what we consider the real question in the case. From the statement above made of defendant's pleadings in setting up the three remaining special defenses, to wit, undisclosed incumbrances, operation of machinery at night, and failure to keep water near each gin stand, it will be observed that they were pleaded and relied on merely as warranties and not as representations, there being no allegations in either of the special answers that the matters therein stated were material or that the company had in any way relied upon such answers. Therefore, if the matters so pleaded were not in law warranties, such special pleas presented no defense, and the insurance company can not complain of any supposed error in submitting same to the jury at its request.

A warranty in an insurance contract is a statement made therein by the assured which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true.

The legal principles from which we deduce this definition of a warranty are so well settled that we deem it unnecessary to attempt to restate them, but will refer to some of the cases in which they have been elaborated. Goddard v. Insurance Co., 67 Texas, 69; Bills v. Insurance Co., 87 Texas, 547; Moulor v. Insurance Co., 111 U. S., 335; Insurance Co. v. Johnston, 80 Ala., 467; Rogers v. Insurance Co., 121 Ind., 570; Insurance Co. v. Simmons, 49 Neb., 811. Applying the above definition to the contract of insurance consisting of the application and policy in this case, we find that the assured made statements with reference to each of the three matters set up in said special answers. If the necessary construction of such statements is that the parties thereby mutually in-

tended that the policy should not be binding unless they were literally true, then the terms of the definition are satisfied, otherwise not. We come then to look to the instrument to determine whether its terms are such as to demand the finding of such intent therefrom. In the first part of this contract, beginning with the application and ending with the provision in the policy reading, "This entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof," we find numerous statements by the assured, including those upon which defendants' said special answers were based. Without so deciding, we may here assume that from the mere reference to them as the assured's *warranties* the legal conclusion would ordinarily follow that, the parties having used a technical term and being presumed to have understood its legal meaning, intended to make the binding force of the policy dependent upon the absolute truth of each statement. This would have been a severe contract upon the assured, for it would have left him without insurance if any statement, however unimportant, were not literally true, e. g., if he had innocently failed to give the correct make of the machinery or the exact height of smokestack above roof. Assuming that the company wished to deal fairly, that the assured really desired insurance, and that they both understood the technical meaning of the word *warranty*, it is but rational to suppose that they would not wish to take the chance of the courts holding that they, by the use of that term, intended to leave the property uninsured in case either of such statements were or should turn out to be not exactly as represented. The next and most natural thing would have been to insert some such stipulation as that above quoted avoiding the policy if the assured had misrepresented any "material fact or circumstance," thus showing that they did not wish to be understood as having previously used the word *warranty* in its technical sense, i. e., did not intend to be understood as having agreed that the policy should be of no effect if any of the preceding statements should be untrue in some immaterial particular. A further evidence that they did not so intend to contract is found in the fact that they immediately after said clause proceeded to state various contingencies upon which the policy *should be void*. If they intended by the use of the former language to provide that the policy should be of no effect in case any of the statements there made were untrue even as to immaterial matters, then they would most probably have used similar language with reference to these latter statements, or rather would not have separated them from the first.

Under these circumstances we can not say that no construction can be placed upon the language of the contract other than that the parties mutually intended the policy to be wholly inoperative in case either of the statements made the basis of said special answers should not be literally true, but on the contrary we think there is ground for the construction that they did not intend that result to follow in reference to such statements unless one of them should be untrue in some material particular.

Under the strict rules applicable to such cases, we must adopt the latter construction and hold such statements not to be warranties.

It results from what has been said above that the judgment must be affirmed.

*Affirmed.*