**SOUTHERN UNDERWRITERS v. SHIP-MAN et al.**

No. 13421.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 9, 1936.

Rehearing Denied Oct. 30, 1936.

T. R. Boone and Kearby Peery, both of Wichita Falls, for appellant.

Grindstaff, Zellers & Hutcheson, of Weatherford, for appellees.

SPEER, Justice.

This is a workmen's compensation case. The record before us is sufficient to show the Seventy-Eighth district court of Wichita county had jurisdiction of the parties and the subject matter.

Mrs. Maruel Alice Shipman and her minor daughter, Wanda Bridges, without a legal guardian acting by and through her next friend, sued the Southern Underwriters to set aside an award of the Industrial Accident Board and for compensation under the Workmen's Compensation Act for injuries sustained by A. B. Shipman while in the discharge of his duties as an employee of the copartnership of Wheeler & Brashear.

Proper allegations were made that the copartnership of Wheeler & Brashear, composed of T. L. Wheeler, A. L. (Al) Brashear, and P. C. Brashear, was a subscriber under the Workmen's Compensation Act, having theretofore purchased from the Southern Underwriters a policy of Workmen's Compensation insurance bearing policy No. WC–822, dated December 4, 1934, and expiring December 5, 1935, and that all notices thereof required by law had been given to make it effective.

The allegations of plaintiff show that the workmen's compensation insurance policy, in favor of the copartnership of Wheeler & Brashear sued on, disclosed that the copartnership was composed of T. L. Wheeler and A. L. Brashear, but that in the alternative it was alleged the said copartnership of Wheeler & Brashear at and before the issuance of the policy and at the time of the injuries sustained by A. B. Shipman was in fact composed of T. L. Wheeler, A. A. Brashear, and P. C. Brashear, and that at the time of the issuance of the policy of workmen's compensation insurance it was the intention of defendant to cover and insure the employees of said copartnership of Wheeler & Brashear, and that if the persons doing business under that firm name were T. L. Wheeler, Al Brashear, and P. C. Brashear, it was the intention of defendant and said copartnership, and the parties forming the same, to provide insurance for all the employees of said copartnership, and that it was the mutual intention of all the parties to the contract that the insurance should cover and apply to all employees of said copartnership doing business under the name of Wheeler & Brashear; that the policy issued to Wheeler & Brashear (T. L. Wheeler and A. L. Brashear) was for the use and benefit of the copartnership and all of its employees, regardless of who constituted the membership thereof.

A further alternative allegation was made that the policy of insurance issued by defendant to Wheeler & Brashear (T. L. Wheeler and A. L. Brashear), employer, was intended by all parties concerned to include P. C. Brashear also, who was at the time of the issuance of the policy a member of the copartnership, and that the omission of his name therefrom was a clerical error, accident, or mutual mistake, and that it was well known to defendant that the said P. C. Brashear was a member of said copartnership. Further allegation was made that if defendant did not know at the time of the issuance of the policy that P. C. Brashear was a member of the copartnership of Wheeler & Brashear, it subsequently learned that fact, and that it failed to cancel or forfeit said contract upon acquiring this information, but continued thereafter to accept premiums on the policy and receive the benefits therefrom, and is now estopped to deny the validity of the policy.

Allegations were made that on December 31, 1934, while Wheeler & Brashear were subscribers under the Workmen's Compensation Act (Vernon's Ann.Civ.St. art. 8306 et seq.) and the policy of insurance issued by defendant was in full force and effect, A.B. Shipman, an employee of Wheeler & Brashear, while in the discharge of his duties as such employee, received an injury for which he and his beneficiaries were entitled to compensation.

There is no complaint made as to the sufficiency of the pleadings as to the nature of the work to be done by Shipman, nor that he was injured while in the course of his employment.

It was further alleged that after A. B. Shipman received his injuries and the defendant paid weekly compensation to him for nine weeks and up to the time of his death, payments were then stopped and defendant had continuously declined payment.

Pleadings also alleged that plaintiff Maruel Alice Shipman, surviving wife of A. B. Shipman, deceased, owed debts for food, clothing, and other necessities of life, including funeral expenses which she was unable to pay; that she is an experienced licensed beauty parlor operator, and that if her compensation should be paid in a lump sum she would expend a portion of it to equip a beauty parlor and engage in that business to support herself and child; that this is a special case in which a manifest hardship and injustice will result to her unless the defendant be compelled to redeem its liability by payment to her of the compensation due, in a lump sum.

Prayer was for the court to set aside the award of the Industrial Accident Board, for a judgment against defendant for compensation of $20 per week for a period of three hundred and sixty weeks, and that the compensation be paid to plaintiff Maruel Alice Shipman; that the defendant be required to redeem its liability by payment in a lump sum, and for interest on past due installments, and that the rights of the minor Wanda Bridges be adjudicated by the court. Further, that the court shall determine who constituted the firm of Wheeler & Brashear at the time of the issuance of the policy, and that in the event it should be found that T. L. Wheeler, A. L. Brashear, and P. C. Brashear constituted the members of that copartnership; then and in that event the policy be reformed so as to include the said P. C. Brashear, and for general relief.

The defendant answered by a general denial and specially that it was true, as alleged in plaintiff's petition, that the claim, upon which this suit is based, was filed with the Industrial Accident Board, and that an award was made thereon, and that both plaintiff and defendant, within the time provided by law, filed their respective notices with that board to the effect they would not abide thereby and gave notice of suit to be filed to set same aside, and that all said notices and the award were seasonably filed and made, and that the suit was instituted at a time and place to confer jurisdiction on the court.

The undisputed testimony adduced upon the trial showed Wheeler & Brashear to be a copartnership, operating a contracting and drilling business in the oil fields in Wichita county, and early in December, 1934, requested Wm. L. Snoddy to procure for them workmen's compensation insurance. Snoddy testified that he knew the firm and the individual members of it, and had previously solicited their business; he knew that T. L. Wheeler, Al Brashear, and P. C. Brashear constituted the copartnership of Wheeler & Brashear. That he was not a general agent with authority to issue policies of insurance but a soliciting agent, and could only take an application for insurance, submit it to his company, and await its approval or rejection; if approved by the company the contract would be prepared, sent to him, and by him delivered. He prepared an application for the insurance of Wheeler & Brashear, filling it out himself, and, knowing it would be satisfactory with the parties, signed it for the firm. The application contained a blank space for the insertion of the name of the applicants, in which place Snoddy wrote, "Wheeler & Brashear"; immediately following these words appear: "Individual, Copartnership, Corporation, Estate or Trusteeship?" Following this was a blank space for the answer to the question, in which space Snoddy wrote: "Copartnership, T. L. Wheeler, A. L. Brashear."

The policy was issued by the Southern Underwriters, based upon the application, and showed the name of the subscriber as "Wheeler & Brashear," and containing a similar clause to that in the application reading: "Individual, co-partnership, corporation or estate? Co-partnership T. L. Wheeler & A. L. Brashear." The application and the policy were introduced in evidence. Snoddy testified that no one told him what to put in the application; that when he wrote the application he was seeking insurance for the copartnership of Wheeler & Brashear and its members, T. L. Wheeler, Al Brashear, and P. C. Brashear; that he knew the members of the firm and had known they constituted the copartnership for several years; he received checks for initial deposit, which were sent to the home office at Houston, one check was by T. L. Wheeler for $74.75 and the other was for the same amount, signed A. A. & P. C. Brashear, by P. C. Brashear.

T. L. Wheeler, in testifying, identified the policy and stated that the indorsement thereon, "Advance deposit premium is amended to read $137.00," meant that was the amount required to be deposited to insure the payment of premiums; that the deposit was paid by checks, they being those identified as being received by Snoddy and sent to the home office of the Southern Underwriters at Houston. He testified the co-

partnership of Wheeler & Brashear was composed of himself, A. A. Brashear, and P. C. Brashear; that A. A. Brashear is the father of P. C. Brashear; the witness did not know why the name of P. C. Brashear was omitted from the application; at the time the policy was issued there was no co-partnership composed of T. L. Wheeler and Al Brashear. Wheeler further testified to the hiring of A. B. Shipman about the middle of July, 1934, to work for the copartnership of Wheeler & Brashear, the firm composed of himself, A. A. Brashear, and P. C. Brashear; that he continued to work for that firm until the date of his injuries, on December 31, 1934; that he saw the accident and described it; that Shipman died on March 17, 1935, from the injuries; that deceased was performing duties in line of his employment and described the nature of the work he was employed to do and many other things not necessary to mention here. He testified he had given a deposition in the case on about August 7 (1935), in which he had testified that he, A. A. Brashear, and P. C. Brashear constituted the copartnership of Wheeler & Brashear, and that Mr. Boone, the attorney for the insurance company, was present when he so testified; that the witness had paid the premiums on the policy since that time; when the policy was taken out it was for the benefit of Wheeler & Brashear, composed of T. L. Wheeler, A. A. Brashear, and P. C. Brashear; the witness said he told Snoddy who constituted the members of the firm, but that if he signed the application he did not read it; he supposed Snoddy had made it out right. The policy has never been canceled; after the accident the representatives of the company came and audited the books and pay rolls of Wheeler & Brashear.

Both A. A. Brashear and P. C. Brashear testified to many of the same things testified to by Wheeler, and that Al and A. A. Brashear was the same person.

The notice to the Industrial Accident Board stated: "Notice is hereby given as required by the Employers' Liability Act, Chapter 103, General Laws, 1917, and amendments thereto that Wheeler and Brashear Al Brashear of 1512 Hayes Street, Wichita Falls, Texas, has become a subscriber under said Act."

The notice given by the insurance company to the same board showed as the "Employer, Wheeler & Brashear (T. L. Wheeler and Al Brashear) address 1512 Hayes Street, Wichita Falls, Texas."

Mrs. "Maruel" Alice Shipman, the plaintiff, testified: That she was the widow of A. B. Shipman; that the minor plaintiff, Wanda Bridges, was her child by a former marriage; that there were no children born to her and deceased; that he had no other dependents than the witness; that she owed a thousand dollars or more in debts, including the funeral expenses of her husband; that she owned no property; that she was an experienced beauty parlor operator and had a license to do that work; that with a properly equipped shop she could clear around $100 per month; that she had customers in her home town who would patronize her in such a business; that if she could get a lump-sum settlement she expected to buy a home for approximately $2,000, pay her debts, and equip a beauty parlor for $1,000 or $1,500 from which to earn a living; that she had a brother who had been helping her some and who would continue to do so in the management of her business. The witness was not cross-examined by defendant.

There were other witnesses who testified, but it is not deemed necessary to mention them nor state the facts testified about.

The case was submitted to a jury on special issues which were answered favorable to plaintiff, upon which answers the court rendered judgment for Mrs. "Marvel" Shipman for $4,133.71, which amount was arrived at by calculations and the agreement of counsel that the compensation rate should be calculated at $14 per week for a period of 360 weeks, allowing certain agreed credits. The court further found against the minor Wanda Bridges. The judgment also vacated the award of the Industrial Accident Board; the cost was taxed against the defendant. Motion for new trial was duly filed and overruled by the court, to which action exceptions were taken and an appeal perfected to this court.

From the transcript and statement of facts before us, we are somewhat confused as to the initials and names of persons referred to. The transcript of plaintiff's petition mentions one member of the copartnership as Al, A. L., and A. A. Brashear, and the declaration in the policy shows it to be A. L. Brashear; one of the plaintiffs' names is given as "Marvel," "Manuel," and "Maruel" Alice Shipman. However, some of these discrepancies may be attributed to copying instruments into the record, and we do not think there is any significance to be attached to the errors, in the view we take of the case.

The substance of the findings of the jury was: (1). The appellant intended by the policy issued to provide compensation for the employees of Wheeler & Brashear, a copartnership composed of T. L. Wheeler, A. A. Brashear, and P.. C. Brashear. (2) The policy issued was intended for the use and benefit of the copartnership of Wheeler & Brashear, composed of T. L. Wheeler, A. A. Brashear, and P. C. Brashear. (3) A. B. Shipman was in the employ of Wheeler & Brashear, a copartnership composed of T. L. Wheeler, A. A. Brashear, and P. C. Brashear on December 31, 1934. (4) A. B. Shipman received personal injuries on December 31, 1934. (5) The injuries sustained by Shipman were received by him while in the course of his employment, by the copartnership of Wheeler & Brashear. (6) The injuries received by Shipman on December 31, 1934, were the producing cause of his death. We quote special issue No. 7: "Do you find. from a preponderance of the evidence that this is a special case and one in which manifest hardship and injustice will result to .the plaintiff unless the compensation due her, if any, be awarded to her in a lump sum? Answer yes or no. Answer: Yes." (8) The defendant knew prior to the date of the injury of A. B. Shipman that P. C. Brashear was a member of the partnership of Wheeler & Brashear.

■ Appellant challenges the court's action in submitting special issues Nos. 1 to 6, both inclusive, and the answers of the jury thereto, upon the grounds that the policy was issued to Wheeler & Brashear (T. L. Wheeler, A. L. Brashear), while the proof showed the copartnership was composed of T. L. Wheeler, A. A. Brashear, and P. C. Brashear, and that A. B. Shipman received the injuries complained of while in the employ of Wheeler & Brashear, a copartnership composed of T. L. Wheeler, A. A. Brashear, and P. C. Brashear; and for the further reason this suit was one to reform the insurance policy and no judgment could be properly rendered thereon in the absence of the subscriber being made a party.

The policy issued by appellant was in favor of a copartnership known as Wheeler & Brashear (T. L. Wheeler and A. L. Brashear), being reported to the Industrial Accident Board in due time and form, and was intended by the parties that it should furnish workmen's compensation insurance to employees of that copartnership if injured while in the discharge of such employment. It is unquestionably true that the application, upon which the policy was written and sent to the home office by Snoddy, the soliciting agent, stated the name of the assured as Wheeler & Brashear, a copartnership composed of T. L. Wheeler and A. L. Brashear. It is equally true that P. C. Brashear was also a member of the firm and this was known to Snoddy, but because of the fact the other two members were the most active ones and managed the.business, he did not mention the third member. We think the facts in evidence will warrant the conclusion that as a matter of law Snoddy was not such agent of appellant as that his knowledge would be imputed to the company, yet we do not consider that appellee's right to recover depended upon appellant having this information.

Wheeler & Brashear was a copartnership separate and distinct, in so far as this contract of insurance was concerned, from any number of individuals who might be interested in its business dealings. The insurance was not issued to cover, and did not cover, injuries to employees of either individual who composed the copartnership. The suit was instituted on the policy by a beneficiary of an employee of the copartnership who was alleged to have been injured while employed by the partnership. Appellee's petition as a matter of description recited the policy was to Wheeler & Brashear (T. L. Wheeler and A. L. Brashear), but further alleged the copartnership in truth and in fact was composed of T. L. Wheeler, A. A. Brashear, and P. C. Brashear, and that A. B. Shipman was injured while in the discharge of his employment of that firm or copartnership. The undisputed testimony showed conclusively that these allegations were true and the verdict of the jury was in line with and corresponded to the pleadings and proof.

It is the contention of appellant that because the application and policy written in response thereto showed applicant was a copartnership known as Wheeler & Brashear, followed by the words "copartnership T. L. Wheeler, A. L. Brashear," and that Shipman was injured while employed by Wheeler & Brashear, a copartnership composed of T. L. Wheeler, A. A. Brashear, and P. C. Brashear, there was no coverage under the policy for an employee of the last-named copartnership. Appellant insists that the case of New Amsterdam Casualty Co. v. Harrington (Tex.Com. App.) 290 S.W. 726, supports its contention.

We do not so construe that decision. In the Harrington Case, supra, a policy of workmen's compensation insurance had issued to Dr. L. F. Gragg, described therein as an individual; Harrington sued on that policy and alleged Dr. L. F. Gragg was his employer and proved he was injured while working for a copartnership. He recovered judgment in the trial court, which judgment was affirmed by the Court of Civil Appeals, 283 S.W. 261, and in reversing both lower courts, the Commission, in 290 S.W. 726, 727, supra, said:

"A copartnership is a legal entity distinct from the individual members composing it, and the allegation that Gragg was Harrington's employer is not shown by proof that a copartnership composed of Gragg and others was his employer.

"Our statutes provide that the judgment of the court shall conform to the pleadings, the nature of the cause proved, and the verdict. While the judgment in this case conforms to the pleadings and verdict, it does not conform to the nature of the cause proved. The proof is at such variance from the cause of action alleged that the court would not be warranted in sustaining the judgment. Western Union Tel. Co. v. Smith, 88 Tex. 9, 28 S.W. 931, 30 S.W. 549; Maddox v. Summerlin, 92 Tex. 483, 49 S.W. 1033, 50 S.W. 567; Bank of Garvin v. Freeman, 107 Tex. 523, 181 S.W. 187."

At a subsequent trial of the Harrington Case, supra, plaintiff amended his pleadings to the effect that he received his injuries while working as an employee of a copartnership composed of Dr. L. F. Gragg and his associates, including Butler, Lynch, and others unknown to him, which fact was known to the insurance company, and that it was the intention of the parties to insure the employees of that firm, and that the policy was issued in the name of Gragg only, as a matter of convenience and as a designation of the firm name. The proof was substantially as it was upon the former trial, resulting in the same verdict and judgment previously appealed from. Upon appeal from the last trial to this court, reported in 11 S.W.(2d) 533, 535 (writ dismissed), error was assigned to the introduction of evidence tending to show mutual mistake, fraud, or accident, because there were no pleadings upon which to base it. This court overruled the assignments and, in doing so, said: "The alleged understanding and intention of the parties was not stipulated in the policy. It is our conclu-

sion that it was not necessary to reform the wording of the policy in the respect noted, in order to admit proof of the real intention and understanding of the parties thereto."

This statement of the court, under the facts of the case, was based on the knowledge the company had of the individuals who composed the copartnership.

In the case before us almost the converse of the facts shown in the Harrington Case exists. The policy issued by the appellant was to the copartnership, the separate legal identity. The application for the policy, made, signed, and sent to the company by Snoddy, contained the gratuitous clause, "Copartnership, T. L. Wheeler, A. L. Brashear." We say it was gratuitous because the names of the partners were not called for by the application, and allegation was made that the attempted effort of Snoddy to give the names of the members of the copartnership was a clerical error and the result of a mutual mistake of all parties, and that it was intended the coverage should be for the employees of the copartnership of Wheeler & Brashear. No complaint is made that the application contained even the wrong initial of one of those named, wherein it was given as A. L. instead of his real initials of A. A. Brashear. We think that when the appellant insured the copartnership of Wheeler & Brashear the protection went to that firm's employees, whoever they may be, in the absence of an allegation and proof by appellant that the insured was guilty of a fraud and deception in withholding the name or names of the individuals composing the firm, and that but for such fraud and deception it would not have issued the policy. The statement in the application giving two names purporting to constitute the copartnership of Wheeler & Brashear, under the facts of this case, did not constitute a warranty, nor was it a misstatement of such material facts concerning the risk as would justify a forfeiture of the policy. Appellant in its brief argues that the omission of the name of one member from a statement as to members of a firm might affect the risk and prevent the insurer from making a thorough investigation of the record of all, before issuing the policy; yet there was no allegation or proof offered tending to show such a condition existed.

Article 5043, Rev.Civ.Statutes, provides: "Any provision in any contract or policy of insurance issued or contracted for in this State, which provides that the answers or

statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case."

■ It was said by our Supreme Court in Phoenix Assurance Co. v. Munger Improved Cotton Machine Co., 92 Tex. 297, 49 S.W. 222, 225, in discussing warranties in contracts of insurance: "A warranty in an insurance contract is a statement made therein by the assured, which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true."

The case of American Central Insurance Co. v. Buchanan-Vaughan Auto Co. (Tex. Civ.App.) 256 S.W. 610, 612, affirmed by Commission of Appeals, 271 S.W. 895, was one on a fire insurance policy covering automobiles while stored in a town in Texas and at the time of the fire and perhaps when the policy was written some of the cars were in a town in Oklahoma, of which fact the local agents of the company had knowledge but had not communicated it to the company. The company denied liability upon the grounds the terms of the policy had been violated and charged collusion between the insured and agent to defraud it by withholding the information; it was said by the court: "If Offenhauser & Co. [local agents] had the right to issue policies of insurance on cars stored in Eldorado, Ark., then the only loss which the appellant [the company] sustained by the failure to state that as. the usual place of storage of some of the cars is the difference in the Eldorado rate and the Texarkana rate. Both the appellee and appellant's agents, Offenhauser & Co., may still be held responsible for that difference on the ground of such mistake. There is no evidence tending to show that the appellant would not have issued the policy on the cars at Eldorado had such information been given to its general officers. If this policy is to be held void because of the error claimed, then the insured loses the benefit of insurance which it might have contracted for had this policy not been issued, or had it been canceled after issuance and before the loss."

St. Paul Fire & Marine Insurance Co. v. Huff (Tex.Civ.App.) 172 S.W. 755, 756, was a suit on fire insurance policy in which the provisions of article 5043, R.C.S., above quoted, were applied, and referring to that statute said: "The statute provides that 'the matter or thing represented' in 'the answers or statements made in the application' must be 'material to the risk' in order to avoid the contract, and that it must be so shown upon the trial and decided as a question of fact. * * * Generally stated, a fact would be material to the insurance risk which would induce the insurance company to decline the insurance altogether, or not to accept it unless at a higher premium."

■■ There was sufficient evidence before the court to warrant the submission of the issues complained of. The verdict returned by the jury and the judgment of the court entered conform to the pleadings and proof. Testimony was offered tending to show that after the policy was issued and had been in effect some time, A. B. Shipman received an injury in the course of his employment by the copartnership; that appellant sent its claim agent and auditor to Wichita Falls, where an investigation was made and the books of the copartnership were audited; appellant accepted liability and made payments for nine weeks, and thereafter accepted payments of premiums on the policy without a declaration of forfeiture, all of which could amount to nothing but a ratification of the contract precluding a forfeiture. There was no allegation by appellant of fraud or deceit in the procurement of the policy by the subscriber, and if the general denial could be termed a sufficient pleading, no evidence was offered to support the contention, nor was the question of the materiality of the misrepresentation in the application raised by the evidence in any way. We therefore overrule the assignments of error raising the questions discussed.

■ Another assignment of error presented by appellant goes to special issue No. 7, which is quoted above. The assigned error is based upon the fact that the statutory grounds under which a claimant is entitled to a lump-sum settlement is presented in a single issue. We had this identical question before us in the recent case of

Traders & General Insurance Co. v. Blancett, 96 S.W.(2d) 420, 425, in which case an application for writ of error is pending in the Supreme Court. We held in that case that, under the evidence and facts before us, there was no reversible error in the submission of the issue complained of.

The record in this case is practically the same as in the Blancett Case. There are proper pleadings upon which to introduce evidence to establish the right of a lump-sum settlement. The material facts were proven, that is, that plaintiff was without means, owned no property, she owed debts amounting to about $1,000, including the expense of her husband's funeral; that with the funds, if gotten in a lump sum, she expected to buy a home, and equip a beauty parlor, out of which she could earn a support; that she was an experienced beauty parlor operator and could earn about $100 per month profit out of such a shop. There was no question raised by appellant as to the truth of plaintiff's testimony, and there are no circumstances in the record before us that create a doubt that it was true and entitled to belief. The jury in response to the issue answered in the affirmative, thereby indicating their belief in the truth of her statements. Missouri P. Ry. Co. v. Somers, 78 Tex. 439, 14 S.W. 779.

Appellant contends the inquiry should have been divided and submitted, if at all, in two issues, one inquiring if failure to pay in a lump sum would work a manifest hardship on her, and the other, if such failure would be an injustice to her. It cites us to the case of Texas Employers' Insurance Ass'n v. Ray, 68 S.W.(2d) 290, decided by this court, where we held the expressions "manifest hardship" and "injustice" were not synonymous terms. An examination of that opinion will reveal that the trial court, in submitting the issue as to a lump sum settlement, omitted that statutory element of whether or not any other settlement than a lump sum would result in "injustice" to plaintiff. The findings of this court that "manifest hardship" and "injustice" were not synonymous therefore resulted in a reversal of the Ray Case, supra, because, as shown, the latter was not embraced in the former.

As stated by this court in the Blancett Case, supra: "It was incumbent upon him to show by a preponderance of the evidence that payment in weekly installments would result in a manifest hardship and injustice to him. It was not sufficient for him to

show that any other form of payment than a lump sum would work a 'manifest hardship' on him, but was required to establish by the evidence that an 'injustice' to him would result therefrom. These are the requisites of the statute."

In support of its assignment, it is argued by appellant that if the two statutory elements had been submitted in separate issues the jury might have found that a hardship would be the result and might have found that an injustice would not have resulted. The jurors are presumed to have understood the question as propounded, and if they did not find both fact elements inquired about to exist, their proper answer would have been "no." They could not have answered the question in the affirmative, as they did, had they not found both elements existed. The burden of proof required was equally as strong against appellee in the manner the issue was worded as it would have been if divided into three or even two separate issues. It will be noted the issue inquired of the jury to determine if this "is a special case" and one in which "manifest hardship" and "injustice" will result, etc. As before stated, there was no evidence adduced to in any way contradict that of plaintiff and nothing in the record tending to show it is not true and worthy of belief. The facts found by the jury in response to issue No. 7 complained of are supported by the evidence, and, we consider, are sufficient to support the judgment rendered.

In support of our conclusions reached here, we cited in the Blancett Case, supra, and here again refer to the same authorities without further comment: Article 8306, § 15, Rev.Civ.Statutes; Speer's Special Issues, p. 128; City of Abilene v. Moore (Tex. Civ.App.) 12 S.W.(2d) 604 (writ refused); Clifton Mercantile Co. v. Gillaspie (Tex. Civ.App.) 7 S.W.(2d) 906, affirmed by Supreme Court, 15 S.W.(2d) 607; St. L. S. F. & T. Ry. Co. v. Ussery (Tex.Civ.App.) 259 S.W. 275. We therefore overrule the assignment raising this question.

What we have said disposes of all assignments of error except a remaining one which complains that the court refused to submit appellant's special issue No. 2, which reads: "Do you find from a preponderance of the evidence that Snoddy accepted the application for a policy of insurance for the benefit of the employees of T. L. Wheeler and A. A. Brashear? Answer, yes or no."

The court submitted as its first special issue: "Do you find from a preponderance of the evidence that the defendant, Southern Underwriters, by the issuance of the policy introduced into evidence, intended to provide compensation insurance for employees of the copartnership composed of T. L. Wheeler, A. A. Brashear and P. C. Brashear? Answer yes or no." This issue was answered "yes."

The undisputed evidence in this case shows Snoddy solicited of Wheeler & Brashear the insurance covered by the policy and that he knew at the time the three persons mentioned in the court's submitted issue constituted the copartnership; as well also it is undisputed that T. L. Wheeler informed him at the time these three named persons did constitute the firm and that the application gave the name of the firm with the additional statement that applicant was a copartnership (T. L. Wheeler, A. L. Brashear) and that the policy was thus issued. It is admitted by appellant in its brief that A. L. and A. A. Brashear are one and the same person. It is also shown by the uncontradicted evidence that when Wheeler contracted for the insurance as well as when Snoddy applied for it, each intended that it should cover the copartnership of Wheeler & Brashear, and the employees of that firm as it was actually composed. The petition upon which the case was tried alleged these facts and upon the trial the appellee sought a recovery upon the grounds alleged. The issue submitted by the court embraced only those contained in the pleadings and upon which evidence was introduced. The issue, as we have seen, was answered favorably to appellee. The requested issue raised only the question of whether or not Snoddy accepted the application for the policy of insurance for the benefit of the employees of T. L. Wheeler and A. A. Brashear.

■ The general denial pleaded by appellant was sufficient to put in issue all the affirmative matters pleaded by appellee, and was a sufficient basis for introduction by it of any defensive matters upon the trial. Rev.Civ.Stat. art. 2006.

The appellant relied upon the expression in the policy which named Wheeler & Brashear as subscribers, a "copartnership T. L. Wheeler, A. A. Brashear," as sufficient evidence to authorize the submission of the requested issue. But we do not believe, and so hold, that the recitation in the policy tended to prove that when Snoddy accepted the application for insurance, he intended to procure a policy that would cover the employees of T. L. Wheeler and A. A. Brashear only, and this was the effect of the requested issue. No inquiry was made as to coverage for the copartnership of Wheeler & Brashear, shown to be the subscriber, but was confined to the two individuals named. Snoddy testified he knew the three members of the copartnership and intended by the application to procure insurance for the employees of that partnership as he knew it to be composed.

■ To concede that the general denial was a sufficient pleading, we do not consider the provision in the policy evidence of probative force sufficient to require the submission of the issue, and for this additional reason we hold there was no error in refusing to submit the requested issue.

Appellant earnestly insists that the rule laid down in many decisions, such as Commercial Standard Insurance Co. v. Noack (Tex.Com.App.) 62 S.W.(2d) 72, and authorities there cited, entitles it to the submission of the requested issue and its refusal constituted reversible error. We recognize the well-established rule laid down in those cases to be that an affirmative issue shall be submitted of all questions raised by the pleadings and evidence, and that the general denial is sufficient pleading upon which defendant may introduce evidence except for certain special defenses. But the policy worded as it was, we hold, furnished no evidence that "Snoddy accepted the application for a policy of insurance for the benefit of the employees of T. L. Wheeler and A. A. Brashear." It may have furnished evidence of something else, but not that, especially in view of the fact that Wheeler testified that he requested Snoddy to procure insurance for the firm of Wheeler & Brashear, apprising him of the members of the firm, and Snoddy testified he intended to procure insurance for the firm and its employees as both he and Wheeler knew them to be; and their testimony is not contradicted in any respect.

All assignments of error are overruled, and the judgment of the trial court is affirmed.