## GOVERNMENT PERSONNEL AUTOMOBILE ASS'N v. HAAG et al.

### No. 10429.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 20, 1939.

Rehearing Denied Oct. 18, 1939.

H. S. Groesbeeck and C. W. Trueheart, both of San Antonio, for appellant.

Eskridge & Groce and Russell Talbott, all of San Antonio, for appellees.

SLATTON, Justice.

This is an appeal from a judgment rendered in the 57th District Court of Bexar County for the sum of $3,943.15, in favor of Anna Haag, et vir, against Government Personnel Automobile Association.

Appellant issued to Frank P. Williams a policy of public liability insurance on a Buick automobile. On September 7, 1935, while the policy was in force, Mrs. Williams, wife of the insured, was driving the automobile and collided with another car which resulted in personal injuries to Mrs. Haag's son. The son died from the injuries. The parents of the son filed suit in one of the trial courts in the State of Kansas, where the parties resided and the accident occurred, and recovered a judgment in the sum of $3,500 against Mrs. Frank P. Williams. The suit was investigated and defended by counsel of the appellant in the name of Mrs. Williams. The judgment was rendered on the 13th day of May, 1936, and became final, upon which execution was issued against Mrs. Williams and returned unsatisfied. After the judgment became final the appellant denied liability on the ground that at the time of the accident Mrs. Williams was not legally operating the automobile. Suit in this State was brought upon that judgment.

The appellant contends that the policy of liability insurance was avoided as a matter of law, because the undisputed evidence in this trial established that the insured, Frank P. Williams, in his application for the policy, falsely and intentionally represented that there was no lien or other encumbrance against the car when in fact there was, and that the existence of such encumbrance was material to the risk in that, if appellant had known the truth, it would either have declined the application or would have made further investigation bearing on the personal risk of the applicant and the mechanical condition of the car.

The second proposition alleges the same facts as contained in the first proposition and asserts that such facts show a breach of a contractual warranty, thereby avoiding the policy.

The provisions of the application and policy bearing on the contentions are as follows:

The Application

"The automobile is owned by me and there is no lien, mortgage, or other encumbrance, except $——— None, due and payable to ———.

"I hereby apply for the following policy contract and as an inducement to the exchange to issue same and accept me as a member I hereby warrant the truth of each of the following statements and ask that the indemnity be issued upon the faith of the truth thereof."

The Policy

"In consideration of the premium deposit herein provided and the statements set forth in the schedule of coverage and statements made in the application therefor, signed by the subscriber, which is hereby made a part hereof, each statement being a warranty, the subscribers to the Government Personnel Automobile Association at Insurers' Exchange, San Antonio, Texas, acting through the duly authorized Attorney-in-Fact of said Association, do hereby jointly, but not severally, agree to indemnify the Subscriber named and described herein for the term and to the extent of the Limit of Liability specified in the schedule of coverage against only such of the perils hereinafter set forth for which a specific premium charge is made opposite the corresponding peril in the schedule of coverage."

"The Subscriber by the acceptance of this policy warrants all statements and facts as set forth below to be accurate and correct and this policy is issued by the Exchange relying upon the truth thereof.

"The automobile is owned by the Subscriber and there is no lien, mortgage or other encumbrance thereon except as follows: No exception.

"Misrepresentations and fraud. This entire policy shall be void if the subscriber has concealed or misrepresented any material fact or circumstance concerning this insurance or subject thereof; or in the case of fraud, attempted fraud or false swearing by the subscriber touching any matter relating to this insurance or subject thereof whether before or after loss."

Frank P. Williams, by deposition, admitted the signature to the application as his own and that at the time he took the insurance he owed an unpaid balance on the purchase price of the car of $151.80, less $12.65, and that he and his wife, at the

**980**

time, were paying $12.65 per month on the balance of the purchase price of the car.

█ The pertinent provisions of the application and policy of insurance which are quoted above must be construed to be representations as distinguished from warranties. Phoenix Assurance Co. of London v. Munger Improved Cotton Mach. Mfg. Co., 92 Tex. 297, 49 S.W. 222. It was necessary for the appellant to allege and prove that the misrepresentations relied on for a breach were material to the risk. This is made evident by the last quoted provision of the policy. It is true that some of the provisions quoted, standing alone, indicate that the statements contained therein were intended to be warranties. But the last quoted provision clearly negatives the idea and shows a clear intention of the parties to the contract to limit the grounds of avoidance of the contract to misrepresentations which are material to the risk. Thus the trial court under the evidence in the present case was justified in concluding that the encumbrance upon the car was not material to the risk. The attorney in fact for the appellant testified, over the objection of appellee, that it was the custom of appellant to make a more extended investigation in instances where there was a mortgage on the automobile tendered for coverage to ascertain the credit rating of the applicant and the condition of the car, and the results of such an investigation would control the company's action whether or not the risk would be accepted. However, on cross-examination he testified as follows:

"Q. I believe you stated on direct examination * * * that a chattel mortgage or conditional sale, where it was encumbered, would increase the risk on one of this type of car. Will you explain that? A. No, I didn't say it would increase the risk, that itself does not increase the risk.

"Q. Well, I say, where there is an encumbrance that in itself would not increase the risk? A. I don't think it has anything to do with the risk."

We are therefore of the opinion that the evidence quoted and summarized made an issue of fact for the determination of the court. As had been said by a court of high standing in the case of Pacific Mutual Life Insurance Company v. Johnson, 5 Cir., 74 F.2d 367, 371: "We may assume that this testimony correctly reflects the opinion of these officers as to the materiality of the statements in question. This would not be proof that the statements plaintiff made were in regard to matters material to the risk, but only evidence on the issue of whether they were. Their materiality would be at last for the court." The trial court found against the appellant.

The third, fourth and fifth propositions assert that appellant is not precluded by waiver or estoppel because of its conduct in the investigation and defense of the case which was tried in the State of Kansas.

The third proposition has reference to the claimed breach of warranty with regard to the encumbrance. Our previous rulings render a decision on this proposition unnecessary because we have held that such statement, with regard to the encumbrance, was a representation and, under the terms of the contract, must be shown to be material to the risk in order to avoid the contract. We have further held that the evidence upon such issue supported the trial court's action in finding that the representation was not material to the risk.

The same is true with reference to the fourth proposition.

By the fifth proposition it is contended that appellant did not waive or forfeit its defense under the "no action" clause of the contract under the rules of law existing in the State of Kansas, by its investigation and defense of the tort action brought in Kansas involving an accident which occurred in that State.

We deem it appropriate to here reiterate that this Court has not held that the appellant, by the investigation and defense of the case in the Kansas court, waived or forfeited its defense of the claimed breach of warranty. We have considered that defense and for reasons above expressed find it without merit. Courts of other states have held that where an insurance company under an indemnity contract takes charge of the defense of an action on which liability rests, it will be estopped from thereafter questioning the claim, either because it was beyond the terms of the policy or because the latter was procured by a breach of some warranty. Malley v. American Indemnity Co., 297 Pa. 216, 146 A. 571, 81 A.L.R. 1322.

It is not necessary for us to approve or disapprove such holdings. The Supreme Court of this State under the wording of the policy contract there involved held

that the Indemnity Company, by entering and controlling the defense of the action to judgment, waived the "no action" clause of the policy. American Indemnity Co. v. Fellbaum, Tex.Civ.App., 225 S.W. 873, affirmed 114 Tex. 127, 263 S.W. 908, 37 A. L.R. 633.

We are of the opinion that liability in the present case under the policy in suit and the facts in evidence may be upheld against the appellant, without the application of the doctrine of waiver or estoppel. The policy provisions upholding this view are as follows:

The appellant "agrees to indemnify the subscriber named and described herein."

"Extended coverage.

"In addition to the subscriber named in this policy, such insurance as is granted under this section shall be available in the same manner and under the same conditions and to the same extent as it is available to such named subscriber, to any person or persons while riding in or legally operating the automobile covered by this policy, and to any person, firm or corporation legally responsible for the operation thereof; but only while it is being used for the purposes specified in Statement II of the schedule of statements and with the consent of such named subscriber or of an adult member of his household who is not a chauffeur or domestic servant." (Here follow some exceptions, none of which apply here.)

"A. Notice of Accident, Claim or Suit. Upon the occurrence of any loss or accident covered hereunder, and, irrespective of whether any injury or damage is apparent at the time, the Subscriber shall give immediate written notice to the Exchange with the fullest information obtainable at the time; however, failure to give such immediate notice shall not invalidate any claim made by the Subscriber if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible. If a claim is made on account of any such accident, the Subscriber shall give like notice thereof immediately after such claim is made with full particulars. If any suit is brought against the Subscriber to enforce such claim, the Subscriber shall immediately forward to the Exchange every summons or other process as soon as the same shall have been served.

"B. Settlement of Claims and Co-operation of the Subscriber. The Subscriber shall not voluntarily assume any liability or interfere in any negotiations for settlement or interfere in any legal proceeding or incur any expense or settle any claim, except at Subscriber's own cost, without the written consent of the Exchange previously given; the Exchange reserves the right to settle or defend, as the Exchange may elect, any such claim or suit brought against the Subscriber; the Subscriber shall in no manner aid or abet the claimant, but, whenever requested by the Exchange, the Subscriber shall aid in effecting settlement, securing information, evidence and attendance of witnesses and in prosecuting appeals and shall at all times render all possible co-operation and assistance.

"C. Right of Recovery. No suit or action shall lie against the Exchange to recover for loss or expense arising or resulting from claims upon the Subscriber for damages unless the Subscriber shall have fully complied with all the terms and conditions of the policy and until the amount thereof shall have been fixed and rendered certain, either by final judgment against the Subscriber after trial of the issue, or by agreement between the parties with the written consent of the Exchange, and unless brought within two (2) years after the date of such judgment or agreement. * * *

"E. Bankruptcy or Insolvency of Subscriber. The bankruptcy or insolvency of the Subscriber named herein shall not relieve the Exchange from the payment of such loss or expense hereunder as would have been payable but for such bankruptcy or insolvency, and in case judgment shall be secured against such named Subscriber by reason of any accident covered hereunder, and, because of such bankruptcy or insolvency, execution on said judgment is returned unsatisfied, then an action may be maintained by the judgment creditor against the Exchange subject to the terms and conditions of this policy for the amount of such judgment not in excess of the Limit of Liability."

Thus it is readily apparent that to give any effect whatever to the extended coverage clause, the word Subscriber in the policy means, as is shown in the clause first quoted, the subscriber named in the policy and "described herein." That is, the subscriber who applied for the policy and the

subscriber "described herein" (in the extended coverage clause) ; that is, any person or corporation "legally operating the automobile covered by this policy." Then the query arises, in what manner and to what extent will such described subscriber be protected? The clause says: "Such insurance * * * shall be available in the same manner and under the same conditions and to the same extent as it is available to such named subscriber."

In the present case the wife of the named subscriber was driving the automobile covered by the policy, within the scope of the perils insured against under the policy, and with the consent of the subscriber, her husband. The evidence discloses that no exception provided in the policy existed. The appellant received notice of the accident and a full report of the facts and circumstances surrounding it. Suit was filed against Mrs. Williams, of which the appellant received notice. An attorney was employed who conducted an investigation of the accident and controlled the defense of such suit to final judgment on behalf of the appellant. Execution upon that judgment was returned unsatisfied, because no property of Mrs. Williams could be found. Evidence in this case shows that she is insolvent.

By the sixth proposition appellant seeks to invoke the no action clause of the policy and asserts that appellee, under the Kansas judgment against Mrs. Williams, is not entitled to recover until a judgment is obtained against the named subscriber, Frank P. Williams. We cannot agree to that strict construction of the policy contract. The construction insisted upon by the appellant would destroy and render nugatory the entire clause designated as the extended coverage clause.

■ We think all provisions of the policy contract must be construed together and each part given effect so as not to destroy any other provision contained therein. Adopting this construction to the policy, and construing the word "Subscriber" in the "No Action" and "Bankruptcy and Insolvency" clauses to mean the named Subscriber, or the Subscriber described in the Extended Coverage clause, all provisions of the contract may be given effect and coverage extended to the person described in the Extended Coverage clause, in this case the wife of the named Subscriber.

■ The language of the "No Action" clause here involved shows that it was the intention of the parties to the contract to avoid suit against the appellant until the conditions of the policy had been complied with, and then only when the damages shall have been fixed and rendered certain, either by final judgment after trial, or by agreement between the parties, with the written consent of appellant, and unless brought within two years after date of such judgment or agreement.

Every protection which the appellant sought to avail itself of has been extended to it under the facts of this case. The same is true of other provisions of the contract. Our construction of the contract gives effect to all of its provisions.

The same construction was evidently given to the contract by the appellant at the time of the investigation and defense of the suit in the Kansas Court. The appellant defended that suit against Mrs. Williams without a non-waiver agreement. We do not mention these facts for the purpose of giving appellee any right against the appellant through the doctrine of waiver or estoppel, but to show the construction appellant evidently placed upon its contract before this suit in Texas was filed.

■ Mr. Appleman, in his work on Automobile Liability Insurance, speaking with reference to an extended coverage clause, says, at page 107: "It gives the insured power to give permission to a third person to use the insured vehicle and bring the person within the protection of the policy. Such person while using the automobile for the purposes for which it is insured and within the scope of the permission granted, becomes an additional insured, even though he has paid no premium nor contributed any benefit to the insurer for such protection."

The policy in suit clearly shows such an intention between the parties to it.

It is our view that appellee is therefore entitled to the judgment rendered by the trial court and the appellant not having shown any reversible error in the record, the judgment is affirmed.